IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

      v.

MARIO L. ALLEN,
    Defendant.

Criminal No. 3:03cr394 (DJN)

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Mario Allen's Motion to Reduce Sentence Pursuant to the First Step Act of 2018 (ECF No. 1674), moving the Court to reduce his sentence from life imprisonment to time served. For the reasons that follow, Defendant's Motion will be GRANTED IN PART and DENIED IN PART. The Court will not reduce Defendant's life imprisonment sentence for Count One, but it will reduce Defendant's sentence for Count Two from life imprisonment to forty (40) years' imprisonment.

## I.     BACKGROUND

### A.   **Factual Background**

Defendant operated as a street-level distributor of crack cocaine in an organization known as the Third Ward Gang in Petersburg, Virginia, since at least 2000 until his arrest for the instant offenses on August 29, 2001. (January 15, 2020, Presentence Investigation Report ("PSR") (ECF No. 1641-1) ¶¶ 42, 50, 69.) Members of the drug distribution organization, including Defendant, carried firearms to intimidate rivals and defend themselves and their drug proceeds. (PSR ¶ 45.) In particular, the Third Ward gang had an ongoing conflict with a rival gang, the Carter Boys, over drug territory, which routinely resulted in acts of violence between the two groups. (PSR ¶ 45.)

On August 28, 2001, Defendant participated in the murder of Robert Brabson in Petersburg, Virginia. (PSR ¶ 50.) That day, Defendant, accompanied by fellow members of his Third Ward Gang, drove by a location used by the rival gang to distribute drugs. There, they saw a rival gang member and began shooting at him. (PSR ¶ 50.) A bullet struck and killed Brabson, a bystander, instead. (PSR ¶ 50.) Defendant subsequently pled guilty to Accessory After the Fact to Murder, a misdemeanor, in the Circuit Court for the City of Petersburg, Virginia. That court sentenced him to 12 months' imprisonment. (PSR ¶¶ 50, 69.)

### B.    Procedural History

On March 2, 2004, a grand jury returned a two-count Third Superseding Indictment against Defendant and seventeen others for Conspiracy to Violate the Racketeering Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(d) ("Count One"), and Conspiracy to Distribute and Possess with Intent to Distribute 50 or More Grams of Cocaine Base, in violation of 21 U.S.C. § 846 ("Count Two"). (Third Superseding Indictment ("Indictment") (Dkt. No. 379).) The predicate crimes underlying the RICO violation in Count One charged that Defendant conspired to commit multiple acts involving murder and drug trafficking. (Indictment at 5.) On August 3, 2004, following a seven-day trial, a jury found Defendant guilty of both counts. (Verdict (Dkt. No. 685).) Specifically, the jury found that the Government had proven beyond a reasonable doubt that Defendant had committed the following predicate offenses underlying the RICO charge in Count One: (1) the First Degree Murder of Robert Brabson, in violation of Va. Code §§ 18.2-18 and 18.2-32; and (2) Conspiracy to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (Verdict at 3-4.)

2

At the time of his sentencing, Count One carried a statutory maximum sentence of life imprisonment based on the statutory maximum sentences for each of the two predicate offenses. Count Two carried a mandatory minimum of ten years' imprisonment and a maximum sentence of life imprisonment. (PSR at 1.) Defendant faced a sentencing guideline range of Life, based on a Combined Offense Level of 44 and a Criminal History Category VI. (PSR ¶¶ 114-16.) On November 17, 2004, United States District Judge James R. Spencer sentenced Defendant to a term of Life imprisonment on each count, to run concurrently to each other and with his then-present state sentence, followed by concurrent five-year terms of supervised release on each count. (Judgment (Dkt. No. 787).)

### C.    Defendant's Motion for First Step Act Relief

On December 23, 2019, Defendant filed a Motion to Appoint Counsel, requesting that the Court appoint an attorney to represent him in his Motion for relief under the First Step Act. (ECF No. 1636.) The Court then appointed the Federal Public Defender to represent Defendant for the purpose of the First Step Act and ordered the United States Probation Office to prepare a First Step Act Worksheet. (ECF No. 1637.)

On November 30, 2020, Defendant, through his appointed counsel, filed the instant Motion under § 404(b) of the First Step Act, asking the Court to reduce his sentences for both counts and to reduce his term of supervised release from five years to four years. (Def.'s Mot. to Reduce Sentence Pursuant to the First Step Act ("Def.'s Mot.") (ECF No. 1674) at 1.) Defendant argues that both Count One and Count Two constitute covered offenses under the First Step Act of 2018, because the Fair Sentencing Act of 2010 modified the statutory penalties for controlled substance offenses, and the First Step Act of 2018 allows the Court to retroactively impose those modified statutory penalties for offenses that occurred before the Fair Sentencing

3

Act's enactment on August 3, 2010. (Def.'s Mot. at 1-2.) Specifically, Defendant argues that the First Step Act covered Count One, because one of the underlying predicates involved the distribution of crack cocaine. Because both convictions constitute covered offenses, Defendant further argues that the Court should reduce his term of imprisonment, because he deserves a sentence reduction under the applicable § 3553(a) factors. (Def.'s Mot. at 10-16.)

On January 19, 2021, the Government filed its opposition to Defendant's Motion, conceding that Defendant's convicted counts constitute covered offenses, but arguing that he does not deserve discretionary relief under the 18 U.S.C. § 3553(a) sentencing factors. (Govt.'s Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to the First Step Act ("Govt.'s Resp.") (ECF No. 1679) at 11-13.)  Defendant filed his Reply to the Government's Response on February 18, 2021, (("Def.'s Reply") (ECF No. 1685)).

Following the Government's concession that Count One constituted a covered offense, the Supreme Court narrowed the definition of a "covered offense," rejecting the Fourth Circuit's previous framework for determining a covered offense. *See Terry v. United States,* 141 S. Ct. 1858, 1862 (2021) (defining a "covered offense" as an individual offense for which the statutory penalty was modified by the Fair Sentencing Act); *United States v. Thomas,* 32 F. 4th 420, 425 (4th Cir. 2022) ("Recently, however, the Supreme Court [in *Terry*] rejected our approach in *Woodson . . . .*").  On July 19, 2021, because the Government had based its Count One concession on the Fourth Circuit's pre-*Terry* framework, the Court ordered the Parties to submit supplemental briefing on whether *Terry* rendered Count One ineligible for relief under the First Step Act. (ECF No. 1695).  On September 27, 2021, Defendant filed his Position on *Terry v. United States*, arguing that Count One still constitutes a covered offense even after *Terry*. (("Def.'s Supp. Mem.") (ECF No. 1701).)  On October 14, 2021, the Government filed its

Supplemental Memorandum on *Terry v. United States*, now claiming that Count One does not constitute a covered offense. (("Govt.'s Supp. Mem.") (ECF No. 1704).)  On October 20, 2021, Defendant filed his Reply to Government Supplemental Memorandum. (("Def.'s Supp. Reply.") (ECF No. 1707).)  This matter is now ripe for review.

In its Worksheet filed before the initial briefing, the United States Probation Office recommended that the Court find Defendant ineligible for relief on Count One and eligible on Count Two.  (First Step Act Amendment Application Worksheet ("Worksheet") (ECF No. 1641).)  The Probation Officer recalculated Defendant's Combined Adjusted Offense Level for all counts of conviction from 44 to 43 and noted that the statutory penalty for Count One did not change under the Fair Sentencing Act.  However, the statutory maximum under Count Two now stands at forty years.  (ECF No. 1641.)

## II.    STATUTORY BACKGROUND

Courts operate under a "baseline rule of sentence finality," which states that "sentences may not be modified once imposed." *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020).  Congress has provided a "narrow exception to finality" in 18 U.S.C. § 3582(c)(1)(B). *United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019).  This statute provides that "[t]he court may not modify a term of imprisonment once it has been imposed except that, in any case, the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B) (emphasis added).

This general rule of finality guides the Court in its interpretation of the scope of the other specific statutes in this case.  By the plain language of § 3582(c)(1)(B), the Court may modify Defendant's sentences only as *expressly permitted* by the Fair Sentencing Act and the First Step Act.  *See Wirsing*, 943 F.3d at 184 ("The First Step Act thus fits under the narrow exception to

5

finality provided in § 3582(c)(1)(B) because it expressly permits the court to modify a term of imprisonment." (quotations omitted)). Accordingly, the Court turns to those statutes.

The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), provided the substantive change that Defendant claims entitles him to a reduction of his sentences for his murder and drug convictions. The Fair Sentencing Act addressed a sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger mandatory minimum sentences. *Wirsing*, 943 F.3d at 178. The disparity originated in a statute passed in 1986 titled the Anti-Drug Abuse Act of 1986. *Kimbrough v. United States*, 552 U.S. 85, 95 (2007) (citing Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207). The Anti-Drug Abuse Act introduced mandatory minimums for drug offenses tied to specific weights of particular drugs. Anti-Drug Abuse Act § 1002, 100 Stat. at 3207-2 to -4 (codified at 21 U.S.C. § 841(b)(1)). The statute imposed a ten-year mandatory minimum sentence for a defendant convicted of an offense involving 5 kilograms of cocaine or 50 grams of crack cocaine. *Id.* § 1002, 100 Stat. at 3207-2. Similarly, the statute mandated a five-year minimum sentence for a conviction of 500 grams or more of powder cocaine or 5 grams or more of crack cocaine. *Id.* § 1002, 100 Stat. at 3207-3. Thus, the Anti-Drug Abuse Act provided that "a drug trafficker dealing in crack cocaine [was] subject to the same sentence as one dealing in 100 times more powder cocaine." *Kimbrough*, 552 U.S. at 91.

In 2010, Congress passed the Fair Sentencing Act to reduce this disparity to 18:1. *See United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013) ("Congress enacted the Fair Sentencing Act [] in response to extensive criticism about the disparity in sentences between crack offenses and powder cocaine offenses."). In § 2, the Fair Sentencing Act reduced the statutory minimums for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the

6

minimums. *Id.* Specifically, Section 2 amended 21 U.S.C. § 841(b)(1) to raise the amount from 5 grams to 28 grams for the 5-year minimum, and from 50 grams to 280 grams for the 10-year minimum sentence. Fair Sentencing Act § 2, 124 Stat. at 2372 (codified at 21 U.S.C. § 841(b)(1)). Additionally, in Section 3, the Fair Sentencing Act eliminated the mandatory minimum sentence for "simple possession" of crack cocaine. *Id.* § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)).

Although the Fair Sentencing Act reduced the sentencing disparity in offenses involving the possession, production or distribution of crack cocaine, it did not amend the statutory penalties for violent crimes in furtherance of trafficking crack cocaine. On the contrary, Congress instructed the United States Sentencing Commission to amend the Sentencing Guidelines to increase the offense levels "if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense." *Id.* § 5, 124 Stat. at 2373. Likewise, Congress directed the Sentencing Commission to increase the offense levels based on the defendant's role and other aggravating factors, including if the "defendant committed the drug trafficking offense as part of a pattern of criminal conduct engaged in as a livelihood." *Id.* at § 6, 124 Stat. at 2373-4. The statute's language clearly demonstrates Congress' intent to reduce the penalties for non-violent crack cocaine offenses without commensurate reductions for violent crack cocaine offenses.

Later, the Supreme Court held that the new penalty provisions in the Fair Sentencing Act applied to all crack cocaine offenders sentenced on or after August 3, 2010, even for offenses committed before that date. *Dorsey v. United States*, 567 U.S. 260, 264 (2012). However, the modifications to the statutory minimum sentences did "not apply retroactively to defendants who

both committed crimes and were sentenced for those crimes before August 3, 2010." *Black*, 737 F.3d at 287.

In December 2018, Congress remedied the non-retroactivity of the Fair Sentencing Act with the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. "On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act." *Wirsing*, 943 F.3d at 180. Specifically, section 404 made the Fair Sentencing Act's modifications to crack cocaine offenses retroactive for defendants convicted before its enactment.

Section 404 has three subsections. Subsection 404(a) defines which offenses the First Step Act's imposition of retroactivity covers:

> (a) DEFINITION OF COVERED OFFENSE.— In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (citation omitted), that was committed before August 3, 2010.

First Step Act, § 404(a), 132 Stat. at 5222. For those defendants sentenced for a covered offense, the next subsection provides how the Court may reduce that sentence:

> (b) DEFENDANTS PREVIOUSLY SENTENCED.— A court that imposed a sentence for a covered offense, may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (citations omitted) were in effect at the time the covered offense was committed.

*Id.* § 404(b), 132 Stat. at 5222. The final subsection of § 404 limits those defendants who may bring a motion and makes clear that the Court retains discretion to grant or deny a motion for a sentence reduction:

> (c) LIMITATIONS.— No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (citations omitted) or if a previous motion made under this section to reduce the sentence was, after the date of the enactment of this Act, denied after a complete review

8

of the motion on the merits. Nothing in this section shall be construed to require a court
to reduce any sentence pursuant to this section.

*Id.* § 404(c), 132 Stat. at 5222. Thus, Section 404 of the First Step Act defines which sentences

the Court may reduce and provides the procedure and authority to apply the Fair Sentencing

Act's crack cocaine penalties retroactively for defendants who committed their covered offenses

before August 3, 2010.

## III.  ANALYSIS

Defendant argues that the First Step Act grants the Court the authority to modify his

sentences for offenses committed under 18 U.S.C. § 1962 and 21 U.S.C. § 846. The Court

entertains this request for a modified sentence mindful of the "baseline rule of sentence finality,"

*Chambers*, 956 F.3d at 671, and that "[t]he law closely guards the finality of criminal sentences

against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir.

2010); 18 U.S.C. §3582(b). Defendant's Motion first and foremost requires the Court to

determine whether Defendant's conviction for a RICO conspiracy, in violation of 18 U.S.C.

§ 1962(d), constitutes a covered offense under the First Step Act.

### A.  Eligibility Generally

The Court must first address the threshold covered offense question, because "eligibility

[for a sentence modification] turns on the proper interpretation of a 'covered offense.'" *Wirsing*,

943 F.3d at 185; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020) ("[T]he existence of

a 'covered offense' is a threshold requirement under the [First Step] Act."). By its own terms,

the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the

statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of

2010." First Step Act, § 404(a), 132 Stat. 5222. Accordingly, eligibility turns on which statute

Defendant violated and whether Section 2 or 3 of the Fair Sentencing Act modified the statutory

penalties for that offense. *See Terry*, 141 S. Ct. at 1862 (emphasizing that "covered offense" inquiry turns on change to statutory penalties for the defendant's violation of the law).

Following passage of the First Step Act, the Fourth Circuit took a broad view of what constituted a "covered offense" and a defendant's eligibility for relief under the statute. In *Wirsing*, the Fourth Circuit held that the "most natural reading of the First Step Act's definition of 'covered offense' is that 'the statutory penalties for which were modified by [certain sections of the Fair Sentencing Act]' refers to 'a Federal criminal statute' rather than a '*violation* of a Federal criminal statute.'" 943 F.3d at 185 (quoting § 404(a)) (alteration and emphasis in original). Then, in *United States v. Woodson*, the Fourth Circuit held that the First Step Act "modified the statutory penalties of 21 U.S.C. § 841(b)(1)(C) as it pertains to crack cocaine offenses, such that a conviction of trafficking crack cocaine pursuant to that statute is a 'covered offense.'" 962 F.3d 812, 814 (4th Cir. 2020). It made this determination, even though the First Step Act did not amend the penalties for § 841(b)(1)(C), because Congress had altered the quantities required to trigger the penalty in subsection (C) for offenses involving less than 28 grams of crack cocaine. *Id.* at 816. It clarified that "the relevant change for purposes of a 'covered offense' under the First Step Act is a change to the statutory penalties for a defendant's statute of conviction, not a change to the defendant's particular sentencing range as a result of the Fair Sentencing Act's modifications." *Id.*

The Supreme Court subsequently rejected these approaches in *Terry*. Directly contradicting the Fourth Circuit's holding in *Woodson*, the Court held that a conviction under § 841(b)(1)(C) did not constitute a covered offense, because "§ 2(a) of the Fair Sentencing Act modified the statutory penalties only for subparagraph (A) and (B) crack offenses." 141 S. Ct. at 1864. In making this conclusion, it also rejected the Fourth Circuit's reasoning in *Wirsing*. The

Court explained that "'statutory penalties' references the entire phrase '*a violation* of a Federal criminal statute,'" 141 S. Ct. at 1863, whereas the Fourth Circuit had determined that the statutory penalties "refers to a 'Federal criminal statute' rather than a 'violation of a Federal criminal statute." *Wirsing*, 93 F.3d at 185. Thus, the Supreme Court concluded that the First Step Act "directs our focus to the statutory penalties for petitioner's *offense*, not the statute or statutory scheme." 141 S. Ct. at 1863. Using the framework set forth by the Supreme Court, the Court must determine whether Defendant's conviction in Count One constitutes a covered offense, thereby rendering him eligible for a sentence reduction under the First Step Act.

### B. Eligibility of Count One Under the First Step Act

#### i. Terry's Framework

In *Terry*, the Supreme Court instructed courts to "ask whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense." 141 S. Ct. at 1862. *Terry* dictates that answering this question involves examining the elements of the offense and determining if the statutory penalties that would result from a conviction charging those same elements changed in 2010 with the passage of the Fair Sentencing Act. For example, the Court noted that someone charged with the original elements of § 841(b)(1)(A)(iii) — knowing or intentional possession with intent to distribute at least 50 grams of crack — faced a statutory penalty range of ten years to life in prison before 2010. 141 S. Ct. at 1863. However, "a person charged with those original elements after 2010 is now subject to the more lenient prison range for subparagraph (B): 5-to-40 years." *Id.* The Court contrasted those offenses with a conviction under subparagraph (C), the elements of which are "(1) knowing or intentional possession with intent to distribute, (2) some unspecified amount of a schedule I or II drug." *Id.* at 1862. The Court noted that before 2010, that offense carried statutory penalties of 0-to-20 years. *Id.* "After 2010,

these statutory penalties remain exactly the same" for someone charged with those same elements. *Id.* at 1862-63.   Consequently, "[t]he Fair Sentencing Act thus did not modify the statutory penalties for petitioner's offense." *Id.* at 1863.   As a result, the Court held "that § 2(a) of the Fair Sentencing Act modified the statutory penalties only for subparagraph (A) and (B) crack offenses — that is, the offenses that triggered mandatory-minimum penalties." *Id.* at 1864.

The Fourth Circuit has recognized that *Terry* narrowed the definition of a "covered offense." *Thomas*, 32 F.4th at 425 ("Recently, however, the Supreme Court rejected our approach in *Woodson*.").   In *Thomas*, the Fourth Circuit considered whether a defendant convicted under §§ 848(a) and (c) may seek relief under the First Step Act.  32 F.4th at 423.  The court concluded that he could not.  *Id.*  The court examined the elements of each offense.  In rejecting the defendant's argument that his Continuing Criminal Enterprise ("CCE") conviction was predicated on his offenses for distributing crack cocaine, rendering it a covered offense, the court noted that *Terry* trains the court's focus "on the statutory penalties for petitioner's offense, not the statute or statutory scheme." *Id.* at 425-26 (quoting *Terry*, 141 S. Ct. at 1863).  Instead,

> Though the [Fair Sentencing] Act did modify the penalties for Thomas's predicate violations under §§ 841(a)(1) and 846, Thomas's statutory penalty range for violating §§ 848(a) and (c) remained the same before and after the FSA — 20 years to life imprisonment, a fine, and a term of supervised release. Thus, because Thomas is serving a sentence for violating §§ 848(a) and (c), his offense is not a covered offense under the Act.

*Id.* at 427.   Importantly, his conviction only required a finding that he committed a continuing series of drug violations, but the quantity and drug type of those violations made no difference for sentencing purposes. *Id.* at 427-28.   Accordingly, the Court will examine Defendant's RICO offense and determine whether the Fair Sentencing Act modified the statutory penalties for his offense, such that it would render him eligible for First Step Act relief.

12

### ii.    Elements of Defendant's RICO Offense

The RICO conspiracy statute reads: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). As *Terry* instructs, the Court will focus on the elements of Defendant's offense to determine if the Fair Sentencing Act modified its statutory penalties.

The Fourth Circuit recently examined the elements of a RICO conspiracy offense in the context of whether a RICO conviction constituted a crime of violence for purposes of 18 U.S.C. § 924(c).  *United States v. Simmons*, 11 F.4th 239 (4th Cir. 2021).  The court stated that a § 1962(d) prosecution involves only three essential elements: "(1) that an enterprise affecting interstate commerce existed; (2) that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise; and (3) that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering activities." *Id.* at 254 (internal quotations omitted).  The statute defines "racketeering activity" to include "any act or threat involving murder" or numerous other federal and criminal offenses or state law offenses "which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).  A § 1962(d) conspiracy can exist "even if no co-conspirator completes *any* of the agreed-upon racketeering acts." 11 F.4th at 255 (citing *Salinas v. United States*, 522 U.S. 52, 63 (1997)).

The RICO statute provides that a defendant who "violates any provision of section 1962" faces a maximum sentence of twenty years' imprisonment.  18 U.S.C. § 1963(a).  However, if the violation of the RICO statute is "based on a racketeering activity for which the maximum penalty includes life imprisonment," such as with Defendant's conviction in Count One, then the maximum penalty for the RICO offense increases to life imprisonment. *Id.*

In *Simmons*, the Fourth Circuit discussed whether this sentencing enhancement factor created an additional element for an "aggravated" form of the crime. 11 F.4th at 255-56. If not, then a RICO offense would require proving the three elements discussed above. *Id.* at 257. If it created an aggravated RICO offense, in addition to the three-element "generic" RICO offense, then the aggravated crime would require proof of the following four elements:

> (1) that an enterprise affecting interstate commerce existed;
>
> (2) that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise;
>
> (3) that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts; and
>
> (4) the defendant committed a "racketeering activity," as that term is defined in 18 U.S.C. § 1961, that carries a maximum statutory penalty of life imprisonment.

*Id.* at 258 (internal quotations omitted).

Ultimately, the Fourth Circuit declined to conclude that the sentencing enhancement factor created an additional element, because it determined that a RICO conspiracy did not categorically constitute a crime of violence under either framework. *Id.* at 257. In making this determination, it noted that the various crimes listed in the statute as racketeering activity constitute means for satisfying the elements of a RICO offense, rather than elements. *Id.* at 259 ("Indeed, 1961(d) lists a number of crimes which can serve as the *means* for satisfying that element of an aggravated RICO conspiracy as they authorize the imposition of a life sentence.").[1]

Here, likewise, the Court need not definitively determine whether a RICO offense subject to life imprisonment constitutes an additional aggravated offense, as neither would constitute a covered offense under the First Step Act. Following the Supreme Court's guidance in *Terry*, the

---

[1]       Defendant takes issue with the Government citing *Simmons* for the means/elements distinction. (Def.'s Supp. Reply at 4.) However, the Court looks to *Simmons* for the elements of a RICO conspiracy so that it may properly apply the test set forth by the Supreme Court in *Terry*.

Court will compare the statutory penalties faced by someone charged with the same elements before and after the 2010 passage of the Fair Sentencing Act.

### iii.    *Application of Terry to the Elements of Defendant's RICO Offense*

Before the passage of the Fair Sentencing Act in 2010, a defendant charged with the elements of the generic RICO conspiracy under § 1962(d) — the existence of an enterprise affecting interstate commerce, intentionally agreeing to participate in the enterprise and agreeing that a member of the conspiracy would commit at least two racketeering activities — faced a term of imprisonment ranging up to twenty years. *See* 18 U.S.C. § 1963 (last amended May 7, 2009). Following the passage of the Fair Sentencing Act, a person charged with those same elements faces a range of imprisonment up to twenty years. *Id.* Thus, the Fair Sentencing Act did not modify the statutory penalties of a RICO conspiracy.

The same result holds with respect to an aggravated RICO conspiracy. Before the Fair Sentencing Act, a defendant charged with the four elements of an aggravated RICO conspiracy — the existence of an enterprise affecting interstate commerce, intentionally agreeing to participate in the enterprise, agreeing that a member of the conspiracy would commit at least two racketeering activities, and the commission of a racketeering activity that carries a maximum statutory penalty of life imprisonment — would have faced a statutory penalty range from zero years to life imprisonment. *Id.* Following the passage of the Fair Sentencing Act, a person charged with those same elements faces the same statutory penalty range. *Id.* Thus, the Fair Sentencing Act did not change the statutory penalty range for an aggravated RICO conspiracy. That a covered offense could have formed the predicate for the fourth element does not change the analysis. The fourth element could include any number of racketeering activities, including

15

other drug violations that do not involve quantities of crack cocaine implicated by the Fair Sentencing Act.

Defendant stretches the elements of a RICO conspiracy in an attempt to have them capture the crimes targeted by the Fair Sentencing Act. He argues that the prohibited racketeering activities include "dealing in a controlled substance . . . punishable under any law of the United States," 18 U.S.C. § 1961(a)(1)(D), which includes possession with intent to distribute at least 50 grams of crack cocaine. (Def.'s Supp. Mem. at 6.) Therefore, the punishment that he faced under § 1963 "turned on the punishments for the controlled substance offenses in 21 U.S.C. § 841(b)(1)." (Def.'s Supp. Mem. at 6.)

This argument misses the mark. To the extent that drug offenses form the predicate of a RICO conspiracy, the RICO charge does not "turn on the punishment" for the drug offenses. Rather, the RICO charge turns on the conduct underlying the drug offenses — the commission of a drug offense. *See* § 1961(1)(D) (defining "racketeering activity" to include "any offense involving . . . buying, selling, or otherwise dealing in a controlled substance . . . , punishable under any law of the United States"). The element that includes the racketeering activity does not turn on the type or quantity of drug like the elements of the drug offenses do. Instead, 18 U.S.C. §1963 controls the punishment, not 21 U.S.C. § 841(b). And, although the Fair Sentencing Act modified the statutory penalties for 21 U.S.C. § 841(b), it left the statutory penalties for 18 U.S.C. § 1963 unaltered. Whether the underlying racketeering activity involved the distribution of 29 grams of crack cocaine (5-40 years' imprisonment for a stand-alone conviction) or 1 gram of crack cocaine (0-20 years' imprisonment for a stand-alone conviction), his statutory penalties for the RICO conspiracy remained the same.

The Fourth Circuit's reasoning in *Thomas* undercuts Defendant's argument.  There, the defendant's §§ 848(a) and (c) continuing criminal enterprise ("CCE") convictions rested on his offenses for distributing crack cocaine. 32 F.4th at 427.  The Government used the crack cocaine offenses to prove two of the five elements of the CCE offense:  that the defendant committed a felony violation of the federal drug laws and the series of violations were undertaken by the defendant in concert with five or more persons. *Id.*  However, the use of covered offenses as predicates did not convert the CCE offense into a covered offense: "Though the Act did modify the penalties for Thomas's predicate violations under §§ 841(a)(1) and 846, Thomas's statutory penalty range for violating §§ 848(a) and (c) remained the same before and after the [Fair Sentencing Act] — 20 years to life imprisonment, a fine, and a term of supervised release." *Id.* The court went on to explain that the element of his CCE offense that required the government to prove that the defendant committed a continuing series of drug violations does not depend on "whether crack was involved or on the quantity of crack involved." *Id.*

The same reasoning applies here.  Although the Fair Sentencing Act modified the statutory penalties for the specific racketeering activities that form a predicate for Defendant's RICO conspiracy conviction, the element of the RICO conspiracy conviction does not depend on "whether crack was involved or on the quantity of crack involved."  Instead, it requires the agreement to commit a "racketeering activity," which does not depend on the type or quantity of drug.  Because Defendant is serving a sentence for violating § 1962(d), his offense is not covered under the First Step Act. *See id.* at 427 ("Thus, because Thomas is serving a sentence for violating §§ 848(a) and (c), his offense is not a covered offense under the Act.").

Defendant argues that the Fourth Circuit's decision in *United States v. Gravatt* compels the Court to find his RICO conspiracy conviction a covered offense, because it includes a

covered offense as a predicate. (Def.'s Supp. Mem. at 6-7.)  In *Gravatt*, the defendant had pled guilty to an indictment charging him with a dual object conspiracy to possess with intent to distribute and to distribute (1) 5 kilograms or more of powder cocaine and (2) 50 grams or more of crack cocaine. 953 F.3d at 261.  Although the Fair Sentencing Act did not alter the statutory penalties for the powder cocaine object of the conspiracy, the Fourth Circuit found his offense a covered offense, because of the modification to the statutory penalties of the crack cocaine object of the conspiracy. *Id.* at 263-64.  Repeating its holding from *Wirsing*, the court held that "all defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act." *Id.* at 264.  This does not help Defendant with respect to Count One, as he finds himself serving a sentence for a violation of 18 U.S.C. § 1962(d), not 21 U.S.C. § 841(b).  If Defendant correctly reads *Gravatt*, then the Fourth Circuit in *Thomas* would have found that the defendant's § 848(c) conviction — predicated on a covered offense — constituted a covered offense.  But it did not.  And the Court will not do so here.

#### iv. *Support from the Purpose of the Fair Sentencing Act*

The conclusion that the First Step Act does not cover a RICO conspiracy finds support in the purpose behind the Fair Sentencing Act.  Defendant received a life sentence on Count One, because he conspired to engage in a racketeering enterprise that murdered people and distributed drugs, regardless of the type or quantity of the drugs.  The Fair Sentencing Act sought to reduce the sentencing disparity for dealing crack cocaine as opposed to dealing other drugs. *See Black*, 737 F.3d at 282 ("Congress enacted the Fair Sentencing Act of 2010 in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses.").  It did not seek to reduce the penalties for committing violence in furtherance of

18

trafficking drugs. Instead, Congress sought to increase the sentences for these acts, instructing the Sentencing Commission to increase the offense levels "if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense." Fair Sentencing Act § 5, 124 Stat. at 2373. Similarly, Congress sought increases to the offense levels if the "defendant committed the drug trafficking offense as part of a pattern of criminal conduct engaged in as a livelihood." *Id.* at § 6, 124 Stat. at 2373-74. Reducing Defendant's sentence for conspiring to commit murder while engaging in a drug distribution scheme runs headlong into Congress' intent to have the Fair Sentencing Act reduce the penalties for non-violent crack cocaine offenses while increasing the sentencing guideline ranges for violent crack cocaine offenders.

Accordingly, for the reasons stated above, the Court finds that Defendant's conviction under § 1962(d) for a RICO conspiracy does not constitute a covered offense for the purposes of the First Step Act. Accordingly, the Court will not resentence him on Count One.

Even if the Court found that Count One constituted a covered offense based on the inclusion of the crack cocaine offense as a predicate, the Court would exercise its discretion and not impose a new sentence. Defendant's statutory maximum and his Guideline Range for Count One would remain life imprisonment. And, as discussed below, the § 3553(a) factors do not counsel in favor of disturbing his life sentence on Count One.

**C.      Eligibility of Count Two Under the First Step Act**

Unlike Count One, Count Two constitutes a covered offense eligible for a sentence reduction under the First Step Act. The First Step Act imposes three eligibility requirements. To qualify for consideration for relief, a defendant must show that he: (1) committed a covered offense on or before August 3, 2010; (2) did not have his sentence reduced under sections 2 or 3

of the Fair Sentencing Act of 2010; and, (3) did not file a previous motion under § 404 of the

First Step Act that the Court decided on the merits. *See United States v. Hardnett*, 417 F. Supp.

3d 725, 733 n.7 (E.D. Va. 2019) (quoting First Step Act statute and limitations).

Here, the Court finds Defendant eligible for a sentence reduction under the First Step Act

for his Count Two conviction. First, he committed a covered offense — a violation of 21 U.S.C.

§ 846, with § 841(b)(1)(A)(iii) as its object — before August 3, 2010. *See Chambers*, 956 F.3d

at 668-69 (reviewing sentence imposed for eligible offense of conspiracy to possess with intent

to distribute 50 or more grams of cocaine base). Second, he did not have his sentence imposed

or reduced under Section 2 or 3 of the Fair Sentencing Act of 2010. Third, he has not filed a

previous motion under § 404 of the FSA that the Court has decided on the merits. Indeed, the

Government does not contest that Count Two constitutes a covered offense. Accordingly, the

Court finds Defendant's sentence for Count Two eligible for a sentence reduction under the FSA.

**D.      The Reduction in Defendant's Sentence on Count Two**

Upon a finding of eligibility, a court may "impose a reduced sentence as if sections 2 and

3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was

committed." First Step Act § 404(b), 132 Stat. at 5222. Even if a defendant meets the eligibility

criteria for a sentence reduction, the Court retains discretion over whether to grant the reduction.

*Wirsing*, 943 F.3d at 180 ("Among other limitations, Congress left the decision as to whether to

grant a sentence reduction to the district court's discretion."); First Step Act § 404(c) ("Nothing

in this section shall be construed to require a court to reduce any sentence pursuant to this

section."). Despite Congress' grant of discretion to district courts, the Fourth Circuit has ruled

that a district court could not, as a matter of discretion, decline to reduce a sentence above the

retroactively applicable statutory maximum. *United States v. Collington*, 995 F.3d 347, 358 (4th

20

Cir. 2021). In evaluating a Defendant's request for relief, the Court must recalculate the

Sentencing Guidelines in light of "intervening case law" and consider the factors set forth in 18

U.S.C. § 3553(a) to determine the sentence that the Court would have imposed under the Fair

Sentencing Act. *Id.* at 355; 18 U.S.C. § 3553(a). However, the FSA "does nothing to alter the

usual understanding that a sentence may not exceed the applicable statutory range." *Collington*,

995 F.3d at 358.

The Court begins by observing the change in statutory penalties for Count Two. The Fair

Sentencing Act altered the statutory penalties for Count Two from 10 years to life imprisonment

down to 5-to-40 years imprisonment. *See Terry*, 141 S. Ct. at 1863 (noting the lowered statutory

penalty ranges for a defendant charged with possessing with intent to distribute at least 50 grams

of crack cocaine).

The Court will next calculate the Guideline Range under the current Sentencing

Guidelines. The PSR attributed 315.35 grams of cocaine base to Defendant for use in

determining the offense level for Counts Two and One(a), the drug predicate. (PSR ¶ 50.)

Under U.S.S.G. § 2D1.1(c)(5), this now results in a base offense level of 30. Defendant received

a two-level enhancement for a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), raising the

offense level for Counts One(a) and Two to 32. The RICO first-degree murder in Count One(b)

carries an offense level of 43 under U.S.S.G. § 2A1.1. Under the grouping rules found in

U.S.S.G. § 3D1.4(c), because the two offense levels span greater than nine offense levels, no

additional grouping enhancement applies. Thus, under U.S.S.G. § 3D1.4, Defendant now has a

combined offense level of 43 for all counts. Combined with a Criminal History Category of VI

(PSR ¶ 115), the Guideline Range for Count Two remains life imprisonment. However, the

statute restricts this sentence to a maximum of forty years.

In addition, an analysis of the factors set forth in 18 U.S.C. § 3553(a) further supports the

Court granting Defendant a reduction only to the restricted range of 40 years for Count Two. 18

U.S.C. § 3553(a). These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    B. to afford adequate deterrence to criminal conduct;

    C. to protect the public from further crimes of the defendant; and

    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines];

5. any pertinent policy statement . . . by the Sentencing Commission;

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In assessing the § 3553(a) factors, the Court may consider a defendant's conduct after his

initial sentencing. *Chambers*, 956 F.3d 667, 674 (4th Cir. 2020). However, "the analysis is not

intended to be a complete or new relitigation of Guidelines issues or the § 3553(a) factors," but

rather enables the Court to "determine what sentence it would have imposed under the Fair

Sentencing Act in light of intervening circumstances." *United States v. Lancaster*, 997 F.3d 171,

175 (4th Cir. 2021). The applicable factors weigh in favor of granting Defendant a reduction to, but not below, the recalculated statutory maximum for Count Two.

First, "the nature and circumstances of the offense and the history and characteristics of the defendant" weigh heavily against any further reduction in Defendant's sentence. Before committing the instant offense, Defendant accumulated several prior convictions. (PSR ¶¶ 53–69.) These offenses include Possession of Cocaine with Intent to Distribute within 1,000 feet of School Property, Possession of Drug Paraphernalia, Obstruction of Justice and Failure to Appear. (PSR ¶¶ 63–65.) Defendant operated as an armed street-level distributor of crack cocaine from at least 2000 until his arrest for the murder of Robert Brabson. (PSR ¶ 50.) Defendant and others routinely engaged in shootings with rival gangs over drug territory. (PSR ¶ 50.) During one such shooting, a bullet struck and killed Brabson, a bystander. (PSR ¶ 50.)

Moreover, Defendant's conduct since entering BOP custody does not evince rehabilitation. For example, Defendant's inmate record shows seven disciplinary infractions, including possession of drugs and possession of a dangerous weapon. (Ex. 2 to Govt.'s Resp. ("Def.'s Discipline Data Sheet") (ECF No. 1679-2) at 1–3.) While Defendant demonstrates a recent interest in bettering himself through educational and therapeutic courses, he also committed a conduct violation in state custody as recently as August 1, 2020. (Ex. 2 to Def.'s Mot. to Reduce Sentence Pursuant to the First Step Act ("Def.'s Mot. Ex.") (ECF No. 1674-2) at 2–5); (Ex. 3 to Govt.'s Resp. in Opp. to Def.'s Mot. to Reduce Sentence Pursuant to the First Step Act ("Def.'s Disciplinary Report") (ECF No. 1679-3) at 1.)

Additionally, Defendant argues that the Court should reduce his sentence, because another co-defendant "actually committed the murder of Mr. Brabson on August 28, 2001." (Def.'s Reply at 4.) However, the jury found beyond a reasonable doubt that Defendant

committed, or aided and abetted, the premeditated killing of Brabson (Verdict at 3), and the First Step Act does not provide the appropriate vehicle to disturb that finding. *See United States v. Roane*, 2020 WL 6370984, at * 20, n.13 (E.D. Va. Oct. 29, 2020) (noting that the defendant could not re-litigate his previously-rejected claim of actual innocence through a First Step Act motion). Moreover, Defendant's attempt to limit his culpability for the murder that he committed demonstrates a lack of contrition, undercutting any claim to rehabilitation that he offers.

The Court has considered evidence of the mitigating factors that Defendant raised in his Motion and *pro se* submissions (ECF No. 1673, 1686), including his rehabilitative efforts and his learning disabilities and vulnerability as a young man at the time of the instant offenses. (Def.'s Mot. at 12.) Additionally, the Court has considered the letters of support that Defendant submitted with his Motion. These mitigating factors and letters weigh in Defendant's favor. However, the violent circumstances of his offenses and regular, ongoing disciplinary incidents while in custody outweigh these mitigating factors.

Next, the Court believes that further reducing Defendant's sentence would not reflect the seriousness of the offense, promote just punishment for the offense, promote respect for the law or afford adequate deterrence to criminal conduct. Considering the circumstances underlying Defendant's Count Two drug conspiracy charge — dealing a substantial amount of crack that, if proven at trial would still carry a potential life sentence and involvement in gang shootings which led to a man's death — Defendant committed extremely serious offenses. The application of the First Step Act to Defendant's convictions reduces his Combined Adjusted Offense Level by only one point (from 44 to 43). (Worksheet.) A sentence reduced below the statutory maximum would fail to reflect the seriousness of Defendant's crimes. Further, Defendant's

24

numerous and regular disciplinary infractions while incarcerated demonstrate his lack of respect for the law. Defendant's risk of recidivism has decreased from 65.6% at the time of his initial incarceration, but it remains high at 48.8%. (Def.'s Mot. at 14.) The Court finds that a sentence reduced below 40 years on Count Two would detract from adequate deterrence to criminal conduct.

Finally, the Court finds that reducing Defendant's sentence to (but not below) the updated statutory maximum of forty years would not lead to unwarranted sentence disparities, as defendants with similar records and similar convictions would likely not receive sentences below what Defendant will receive here. For example, Defendant points to a co-conspirator, Kevin Langston, who received a sentence reduction under the First Step Act. Langston's PSR attributed 540.45 grams of cocaine base to him, greater than Defendant's 315.35 grams. (February 25, 2019, Langston Presentence Investigation Report ("Langston PSR") (ECF No. 1591-1) ¶ 50); (PSR ¶ 50.) Langston received an offense level reduction to 34 under the new guidelines and a sentence of 144 months. (February 25, 2019, Langston First Step Act Work Sheet ("Langston Worksheet") (ECF No. 1591) at 1); (Ord. Reducing Sentence – First Step Act and Op. for Kevin Langston ("Langston Ord. Reducing Sentence") (ECF No. 1618) at 1-2.) Therefore, Defendant argues that his own case requires a sentence reduction to avoid a sentencing disparity with Langston. (Def.'s Mot. at 11.)

However, the Court reviewed and considered Langston's conviction and sentences and finds that they do not warrant further reducing Defendant's sentences. First, and importantly, the jury found that Defendant "committed, or aided and abetted, the willful, deliberate, and premeditated killing of Robert Brabson, Jr. on August 28, 2001." (Verdict at 3.) The jury did not make such a finding with respect to Langston. The jury convicted both Defendant and

25

Langston of RICO conspiracies, in violation of 18 U.S.C. § 1962(d), an offense which instructs that the underlying unlawful racketeering activity should guide the offense level. (Langston PSR at 37–38, Worksheet A.) Langston's offense level started lower than Defendant's, because his underlying racketeering activities consisted of conspiracy to distribute cocaine base between 500 grams and 1.5 kilograms (base level of 36) and attempted murder (base level of 28). (Langston PSR at 37–38, Worksheet A.) On the other hand, Defendant's underlying racketeering activity amounted to conspiracy to distribute cocaine base between 150 and 500 grams (base level of 34) and first-degree murder of Robert Brabson (base level of 43). (PSR at 33–34, Worksheet A.) Because of the critical difference in the underlying racketeering activity, Langston received a Combined Adjusted Offense Level of 34 under the new guidelines. (Langston Worksheet at 1.) Defendant's Offense Level, however, stands at 43. Therefore, an offense level reduction is not necessary in this case to "avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

Additionally, the court granted Langston a sentence reduction before the Supreme Court narrowed the definition of a "covered offense" under the First Step Act in *Terry*. In reducing Langston's sentence, the Court assumed his RICO conspiracy conviction constituted a covered offense without analyzing the issue. As mentioned, the Court finds that Defendant's RICO conviction does not constitute a covered offense, because the Fair Sentencing Act did not modify the statutory penalties for Defendant's offense.

The recalculated sentencing guidelines and applicable § 3553(a) factors, taken as a whole, counsel against reducing Defendant's term of imprisonment for Count Two below the 40-year statutory maximum.

26

### E.     Defendant's Term of Supervised Release

The Court next considers whether to reduce Defendant's term of supervised release, because custodial and supervised release terms act as components to form one unitary sentence. *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018); *see also United States v. Venable* 943 F.3d 187, 194 (4th Cir. 2019) (holding that a defendant serving revocation sentence as part of the penalty for his initial sentence "is still serving his sentence for a 'covered offense' for purposes of the First Step Act."). The Court finds that Defendant's circumstances do not warrant a reduction in his term of supervised release. First, Defendant's current term of supervised release on Count Two (5 years) lies within the statutorily prescribed range. *See* 21 U.S.C. § 841(b)(1)(B) (minimum 4-year term of supervised release); 18 U.S.C. § 3583(b)(1) (maximum 5-year term of supervised release for Class A or B felonies); *see also* (PSR at 41, Worksheet D (calculating original guideline range of supervised release at 5 years)). Additionally, the same analysis of the § 3553(a) factors that counsel against reducing Defendant's custodial sentence (discussed above) also weigh against reducing his term of supervised release, especially with respect to the circumstances of the offense and characteristics of Defendant. Therefore, the Court will not reduce Defendant's term of supervised release.

### III.     CONCLUSION

For the reasons stated above, the Court will GRANT IN PART and DENY IN PART Defendant's Motion to Reduce Sentence Pursuant to the First Step Act of 2018 (ECF No. 1674). The Court will not reduce Defendant's life imprisonment sentence for Count One, but it will

reduce Defendant's sentence for Count Two from life imprisonment to forty (40) years' imprisonment.

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Dated: June 13, 2022

28